E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SARAH SPIELBERGER (Cal. Bar No. 311175)
ALEXANDRA MICHAEL (Cal. Bar No. Pending)
Assistant United States Attorneys
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3756
    Facsimile: (213) 894-0141
    E-mail:    sarah.spielberger@usdoj.gov
               alexandra.michael@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　　　v.<br><br>CARLOS CORONA, et al.,<br><br>　　　　Defendants. | No. 23-CR-429-JFW-3<br><br>PLEA AGREEMENT FOR DEFENDANT JOHN WESLEY BESS JR. |

　　　1.　　This constitutes the plea agreement between JOHN WESLEY BESS JR. ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

　　　2.　　Defendant agrees to/that:

　　　　　a.　　At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Counts One and 46

*WP 4/16/24*

of the indictment in <u>United States v. Carlos Corona, et al.</u>, No. 23-CR-429-JFW-2, which charge defendant with Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1349, and Aggravated Identity Theft, in violation of 18 U.S.C. §§ 1028A(a)(1), 2(a).

       b.   Not contest facts agreed to in this agreement.

       c.   Abide by all agreements regarding sentencing contained in this agreement.

       d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

       e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

       f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

       g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

       h.   Any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

       i.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all

of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

j.   Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

k.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

THE USAO'S OBLIGATIONS

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to

U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

### NATURE OF THE OFFENSES

4.   Defendant understands that for defendant to be guilty of the crime charged in Count One, that is, Conspiracy to Commit Bank Fraud, in violation of Title 18, United States Code, Section 1349, the following must be true:

a.   First, beginning no later than October 14, 2020, and continuing through at least on or about August 18, 2023, there was an agreement between two or more persons to commit Bank Fraud, in violation of Title 18, United States Code, Section 1344(1);

b.   Second, defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

c.   Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

5.   Defendant understands that for an individual to be guilty of Bank Fraud, in violation of Title 18, United States Code, Section 1344(1), the following must be true:

a.   First, the individual knowingly executed or attempted to execute a scheme to defraud a financial institution of something of value;

b.   Second, that the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

c.   Third, the individual did so with the intent to defraud the financial institution; and

1        d.    Fourth, the financial institution was insured by the
2   Federal Deposit Insurance Corporation.
3        A "scheme to defraud" means any deliberate plan of action or
4   course of conduct by which someone intends to deceive or cheat, in
5   other words to deprive the victim of money or property by means of
6   deception.  It is not necessary for the government to prove that a
7   financial institution was the only or sole victim of the scheme to
8   defraud.  It is also not necessary for the government to prove that
9   the defendant was actually successful in defrauding any financial
10  institution.  Finally, it is not necessary for the government to
11  prove that any financial institution lost any money or property as a
12  result of the scheme to defraud.
13       An "intent to defraud" means to act willfully and with the
14  specific intent to deceive and cheat.
15       6.    Defendant understands that for defendant to be guilty of
16  the crime charged in Count 46, that is, Aggravated Identity Theft, in
17  violation of Title 18, United States Code, Section 1028A(a)(1), the
18  following must be true:
19       a.    First, defendant knowingly possessed or used without
20  legal authority a means of identification of another person;
21       b.    Second, defendant knew that the means of
22  identification belonged to a real person; and
23       c.    Third, defendant did so during and in relation to the
24  commission of Conspiracy to Commit Bank Fraud, in violation of 18
25  U.S.C. § 1349, as charged in Count One of the indictment, or Bank
26  Fraud, in violation of 18 U.S.C. § 1344(1), as charged in Count Two
27  of the indictment.
28

7.   Defendant understands that for defendant to be guilty of aiding and abetting Aggravated Identity Theft, as charged in Count 46, in violation of Title 18, United States Code, Sections 1028A(a)(1), 2(a), the following must be true:

a.   First, someone else committed Aggravated Identity Theft;

b.   Second, defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of Aggravated Identity Theft;

c.   Third, defendant acted with the intent to facilitate Aggravated Identity Theft; and

d.   Fourth, defendant acted before the crime was completed.

## PENALTIES AND RESTITUTION

8.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1349, is: 30 years' imprisonment; a 5-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Sections 1028A(a)(1), 2(a), is: 2 years' imprisonment; a 1-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is:

32 years' imprisonment; a 5-year period of supervised release[1]; a fine of $1,250,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

11. Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 18, United States Code, Sections 1028A(a)(1), 2(a), is: 2 years' imprisonment, which must run consecutive to any other sentence of imprisonment, and a mandatory special assessment of $100.

12. Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts. The parties

---

[1] Defendant understands that there is case law suggesting that the term of supervised release on Count 46 could be imposed to run consecutively to the terms of supervised release on the other count. While the USAO does not intend to seek a consecutive term of supervised release, defendant understands that if the Court were to impose a consecutive term of supervised release, the maximum term of supervised release for all of the counts of conviction would be six years, rather than five years as stated in the text above.

currently believe that the applicable amount of restitution is approximately $2,722,632.52, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

13.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

14.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

15.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States

citizen, the convictions in this case make it practically inevitable
and a virtual certainty that defendant will be removed or deported
from the United States.  Defendant may also be denied United States
citizenship and admission to the United States in the future.
Defendant understands that while there may be arguments that
defendant can raise in immigration proceedings to avoid or delay
removal, removal is presumptively mandatory and a virtual certainty
in this case.  Defendant further understands that removal and
immigration consequences are the subject of a separate proceeding and
that no one, including his attorney or the Court, can predict to an
absolute certainty the effect of his convictions on his immigration
status.  Defendant nevertheless affirms that he wants to plead guilty
regardless of any immigration consequences that his pleas may entail,
even if the consequence is automatic removal from the United States.

FACTUAL BASIS

16.  Defendant admits that defendant is, in fact, guilty of the
offenses to which defendant is agreeing to plead guilty.  Defendant
and the USAO agree to the statement of facts provided below and agree
that this statement of facts is sufficient to support pleas of guilty
to the charges described in this agreement and to establish the
Sentencing Guidelines factors set forth in paragraph 17 below but is
not meant to be a complete recitation of all facts relevant to the
underlying criminal conduct or all facts known to either party that
relate to that conduct.

a.  Beginning no later than October 14, 2020, and
continuing through at least August 18, 2023, in Los Angeles County
and Orange County, within the Central District of California, and
elsewhere, defendant conspired and agreed with co-defendants CARLOS

CORONA, JOSE LUIS EDEZA JR., RICARDO OCHOA JR., SAULO SOLARES, CARLOS LUIZ ARELLANO, SOFIA ALVAREZ, KAREN VANESSA MARTINEZ, VANESSA CORTES ARZATE, and RICARDO WILFREDO NICHOLSON (collectively, the "CO-CONSPIRATORS"), to knowingly and intentionally commit bank fraud. Specifically, defendant and the CO-CONSPIRATORS agreed to knowingly execute a scheme to fraudulently obtain money owned by Bank of America, N.A. ("BOA"), Citibank, N.A. ("Citi"), Wells Fargo, N.A. ("WFB"), JP Morgan Chase Bank ("Chase"), U.S. Bancorp ("USB"), Kinecta Federal Credit Union ("Kinecta"), Navy Federal Credit Union ("NFCU"), and SchoolsFirst Federal Credit Union ("SchoolsFirst") (collectively, the "Financial Institutions"), through materially false and fraudulent pretenses, representations, and promises. Defendant joined this conspiracy knowing of this object and intending to help accomplish it.

b. At all times during the conspiracy, BOA, Citi, WFB, Chase, USB, Kinecta, NFCU, and SchoolsFirst were financial institutions insured by the Federal Deposit Insurance Corporation ("FDIC").

c. In furtherance of the conspiracy, co-defendant SOLARES and others stole checks from the U.S. mail, including from mailboxes and post office mail collection boxes located outside of U.S. Post Office locations. Defendant and co-defendants CORONA, EDEZA, and OCHOA, and other co-conspirators, would then take possession of the checks that co-defendant SOLARES and others stole.

d. In furtherance of the conspiracy, defendant and co-defendants CORONA, EDEZA, OCHOA, ALVAREZ, MARTINEZ, CORTES ARZATE, ARELLANO, and NICHOLSON, and other co-conspirators, solicited bank account holders through social media to provide their debit cards and

bank account information to defendant and his co-conspirators.  In
return, defendant and his co-conspirators promised these account
holders a cut of any fraudulent funds deposited into their accounts.
To circumvent the fraud protections of the Financial Institutions,
defendant and his co-conspirators specifically requested bank
accounts that had been open for a certain amount of time so that the
defendants could get access to the stolen funds more quickly.  Once
bank account holders responded to the advertisements via social media
and provided the information requested in the advertisements,
including bank account numbers, PIN numbers, and online banking log-
in information, defendant and his co-conspirators also took physical
possession of the account holders' debit cards.  Defendant and his
co-conspirators then exchanged the debit cards and bank account
information obtained from the bank account holders with each other.

   e.  In furtherance of the conspiracy, defendant and co-
defendants CORONA, EDEZA, and OCHOA, and other co-conspirators,
deposited the stolen checks into the bank accounts that had been
sourced by defendant and other co-conspirators.  In most cases, the
stolen checks were falsely endorsed in the original payee's name.  In
doing so, the co-conspirators falsely represented that they were the
payees on the checks and were entitled to the funds and concealed
that they were not the payees on the stolen checks and that they were
not authorized to deposit the checks or receive the payees' funds.
In some cases, the checks were washed or altered to make the payee
the name of the owner of the bank account into which the checks were
being deposited.

   f.  In furtherance of the conspiracy, after the stolen
checks were deposited into the bank accounts described above,

defendant and co-defendants CORONA, EDEZA, and OCHOA, and other co-conspirators, rapidly depleted the fraudulently deposited funds from the account holders' accounts by making cash withdrawals, electronic transfers, and/or debit card purchases.

g.   Throughout the course of the conspiracy, to conceal the fraud, defendant and his co-conspirators instructed account holders to claim that their accounts had been compromised if contacted by the Financial Institutions about the fraudulent deposits.

h.   Also in furtherance of the conspiracy, defendant and his co-conspirators committed at least the following acts:

i.   On September 24, 2021, in response to co-defendant SOLARES's Instagram direct message asking if defendant needed stolen checks in amounts over $20,000, defendant responded that he did.

ii.   On September 28, 2021, in response to co-defendant SOLARES's Instagram direct message containing two photographs depicting approximately 19 stolen checks, including checks issued by the United States and the State of California, defendant said he wanted the "state checks."

iii. On February 18, 2021, defendant directed co-defendant EDEZA to post to his Instagram story a photograph depicting: (1) a WFB ATM receipt dated February 18, 2021 that documented a check deposit in the amount of $21,936 which would be available on February 19, 2021, (2) a WFB debit card, and (3) a logo for "2021."

iv.   On June 14, 2021, defendant posted an Instagram story entitled "Money Monday," depicting a photograph of a stack of

debit cards with the caption "ALL BANKS WELCOME TAP IN," and inviting followers to send defendant a direct message if they were interested in making money.

v.   On June 22, 2021, defendant posted an Instagram story that invited followers with BOA or WFB accounts to direct message him.

vi.   On December 17, 2020, co-defendant MARTINEZ sent defendant an Instagram direct message stating that she was going to give the bank accounts that she had recruited to defendant to deposit checks into because co-defendant CORONA was on vacation.

vii.  On January 28, 2021, in Instagram direct messages, co-defendant ARRELLANO sent defendant three PIN numbers for debit cards that co-defendant ARRELLANO had caused to be delivered to defendant and indicated that the PIN number for the fourth debit card was written on the card.

viii.   On January 31, 2021, in response to co-defendant ARRELLANO's Instagram direct message asking if Citi or Capital One accounts worked in the scheme, defendant said that Citi accounts worked, but he was not sure about Capital One accounts.

ix.  On March 9, 2021, in response to co-defendant MARTINEZ's Instagram direct message stating that it was "time to start scamming," defendant said that he "hate[d] regular jobs."

x.   On March 11, 2021, co-defendant MARTINEZ sent defendant an Instagram direct message stating, "Free Money Babes for me."

xi.  On June 9, 2021, in response to Co-Conspirator 4's Instagram direct message stating that they were interested in participating in the scheme, co-defendant NICHOLSON told Co-

1  Conspirator 4 to contact defendant, which Co-Conspirator 4 did.

2            xii. On July 22, 2021, defendant arranged to pick up

3  Co-Conspirator 4's debit card.

4            xiii.   On October 8, 2021, defendant sent an

5  Instagram direct message to co-conspirators including co-defendants

6  CORONA, EDEZA, OCHOA, ARRELLANO, and NICHOLSON, stating that

7  defendant needed BOA or WFB accounts and that he was "ready for a new

8  week" and for "new money."

9  **Accountholder B.T. (WFB 1491)**

10            xiv. On January 8, 2021, in Instagram direct messages,

11  defendant sent co-defendant CORONA a photograph depicting three debit

12  cards, including one bearing the name of B.T.

13            xv.  On January 11, 2021, in response to co-defendant

14  CORONA's Instagram direct message asking if defendant had business

15  accounts because co-defendant CORONA had business checks, defendant

16  said, "hot shit."

17            xvi. On January 12, 2021, co-defendant CORONA

18  deposited check no. 10030 from D.M.G.C., Inc. payable to the Law

19  Office of L.A.R. in the amount of $8,000 into WFB Account 1491 at an

20  ATM in Gardena, California.

21            xvii.   On January 12, 2021, defendant sent co-

22  defendant CORONA a photograph depicting an ATM receipt documenting

23  that check no. 10030 was deposited into WFB Account 1491.  Defendant

24  indicated that the funds would be available on January 13, 2021.

25            xviii.   On January 15, 2021, defendant withdrew

26  $2,500 in cash from WFB Account 1491 at an ATM in Lynwood,

27  California.

28

**Accountholder M.C. (WFB Account 5820)**

   xix. On January 30, 2021, in response to Co-Conspirator 3's Instagram direct message that he had a WFB debit card for defendant, defendant said that he could try to deposit some stolen checks in the account on Monday.

   xx.  On Monday, February 1, 2021, using Instagram direct messages and voice calls, defendant arranged to pick up WFB Card 4832 from Co-Conspirator 3.

   xxi. On February 1, 2021, defendant deposited check no. 143 from S.C.T. payable to R.T. in the amount of $2,350 into WFB Account 5820 using WFB Card 4832 at an ATM in Gardena, California.

   xxii.  On February 2, 2021, in an Instagram direct message, defendant sent Co-Conspirator 3 a photograph depicting an ATM receipt that documented the deposit of check no. 143 into WFB Account 5820 and that the account had a balance of -$233.06 until the check funds cleared.  Defendant told Co-Conspirator 3, "This to see what that Negative do."

**Accountholder C.C.H. (WFB Account 4158)**

   xxiii.  On February 1, 2021, defendant deposited check no. 4025 from T.G., LLC payable to A.B.I. in the amount of $20,530.23 into WFB Account 4158 using WFB Card 2176 at an ATM in Gardena, California.

   xxiv.  On February 2, 2021, in response to co-defendant EDEZA's Instagram direct message asking whether check no. 4025 had cleared, defendant told co-defendant EDEZA to tell C.C.H. not to try to withdraw any money from WFB Account 4158 yet.

   xxv. On February 5, 2021, in Instagram direct messages, co-defendant EDEZA asked defendant how it was going with

WFB Account 4158, which co-defendant EDEZA had "got" for defendant, and how many more days it would take to withdraw the full amount of the stolen checks deposited into WFB Account 4158.

xxvi.     On February 6, 2021, defendant withdrew $700 in cash from WFB Account 4158 at an ATM in Los Angeles, California.

xxvii.     On February 6, 2021, in response to co-defendant EDEZA's Instagram direct message stating that C.C.H. was asking how long it would take to withdraw the full amount of the stolen checks deposited into WFB Account 4158, defendant sent a photograph depicting a portion of a WFB ATM receipt showing the February 6, 2021, $700 cash withdrawal and a remaining balance of $6,233.28 in WFB Account 4158.

xxviii.     On February 8, 2021, defendant withdrew $1,000 in cash from WFB Account 4158 at an ATM in Westchester, California.

xxix.     On February 8, 2021, in response to co-defendant EDEZA's Instagram direct message asking if defendant had gotten more cash out of WFB Account 4158 that day, defendant said he had taken out all $100 bills and that defendant would likely complete the withdrawals by February 10, 2021.

**Accountholder R.B.  (WFB Account 8769)**

xxx. On February 10, 2021, defendant deposited check no. 40146 from J.P.T., Inc. payable to N.C.C.B., Inc. in the amount of $31,143.75 into WFB Account 8769 using WFB Card 7041 at an ATM in Gardena, California.

xxxi.     On February 11, 2021, defendant withdrew $2,500 in cash from WFB Account 8769 at an ATM in Westchester, California.

16

xxxii.   On February 11, 2021, defendant withdrew $800 in cash from WFB Account 8769 at an ATM in Westchester, California.

xxxiii.   On February 11, 2021, in response to co-defendant ARRELLANO's Instagram direct message asking if defendant was "cashing out," defendant told co-defendant ARRELLANO that he had gotten $3,300 out of WFB Account 8769 and sent a photograph of a portion of the ATM receipt documenting the February 11, 2021, $800 cash withdrawal in front of a stack of $100 and $20 bills.

**Accountholders G.M. & J.M. (WFB Account 4225)**

xxxiv.   On March 29, 2021, in response to co-defendant EDEZA's Instagram direct message stating that co-defendant EDEZA still needed to get the PIN numbers because he forgot to the previous night, defendant said, "Hahah need those."

xxxv.   On March 29, 2021, using Instagram direct messages, co-defendant EDEZA told defendant that co-defendant EDEZA's "homie" was "still at work" and would send the PIN numbers "in a bit."

xxxvi.   On March 29, 2021, defendant deposited check no. 1159 from H., LLC payable to WFB in the amount of $4,000 into WFB Account 4225 using WFB Card 7597 at an ATM in Compton, California.

xxxvii.   On March 29, 2021, defendant deposited check no. 1031 from S.A., LLC payable to G.M.E., Inc. in the amount of $5,000 into WFB Account 4225 at an ATM in Compton, California.

xxxviii.   On March 30, 2021, defendant withdrew $700 in cash from WFB Account 4225 at an ATM in Gardena, California.

xxxix.   On March 30, 2021, defendant sent co-defendant EDEZA an Instagram direct message stating that the stolen checks deposited into WFB Account 4225 had cleared.

xl.  On March 30, 2021, using Instagram direct messages, defendant sent co-defendant EDEZA a photograph of the ATM receipt documenting the March 30, 2021, $700 cash withdrawal from WFB Account 4225 as well a stack of $50 bills covering a WFB debit card.

xli. On March 30, 2021, using Instagram direct messages, defendant sent co-defendant EDEZA a photograph of the ATM receipt documenting the March 30, 2021, $700 cash withdrawal from WFB Account 4225 with the bank account information redacted.  Defendant directed co-defendant EDEZA to post the photograph to his Instagram story to recruit more accountholders to participate in the scheme.

**Accountholder L.M. (WFB Account 6668)**

xlii.   On July 26, 2021, defendant deposited stolen check no. 6814 from C.G.G.M. payable to F.K. LLC in the amount of $6,688.60 into WFB Account 6668 at an ATM in Inglewood, California.

xliii.   On July 27, 2021, defendant withdrew $2,500 in cash from WFB Account 6668 at an ATM in Westchester, California.

xliv.   On July 27, 2021, defendant posted to his Instagram story a partially redacted photograph depicting an ATM receipt documenting the July 27, 2021, $2,500 cash withdrawal from WFB Account 6669 and a stack of $100 bills with the caption, "same shit different day we gotta get FMB."

i.  Defendant admits that by engaging in the conduct and acts described above: (1) he knowingly executed and participated in a scheme to defraud the Financial Institutions of money; (2) he did so with the intent to defraud the Financial Institutions; and (3) he

1   unlawfully obtained money from the Financial Institutions through

2   false and fraudulent pretenses, statements, and representations,

3   which had the natural tendency to influence the Financial

4   Institutions to part with money.

5          j.    Defendant admits that over the course of the

6   conspiracy, he and his co-conspirators: (1) attempted and intended to

7   cause a loss of at least $5,392,100.17 to several of the Financial

8   Institutions; and (2) caused an actual loss of $2,722,632.52 to WFB.

9   Defendant further admits it was reasonably foreseeable to him that

10  all of this loss was a potential result of the above-described bank

11  fraud conspiracy.

12         k.    Defendant admits that he and his co-conspirators

13  caused monetary losses to at least 10 victims, including the

14  Financial Institutions.

15         l.    Defendant admits that on January 12, 2021, he and co-

16  defendant CORONA, each aiding and abetting the other, knowingly

17  possessed and used, without lawful authority, a means of

18  identification that defendant knew belonged to another person, that

19  is, the name and signature of L.A.R., during their participation in

20  the bank fraud conspiracy described above.  Specifically, on January

21  12, 2021, co-defendant CORONA deposited a check made payable to the

22  Law Office of L.A.R. in the amount of $8,000 (the "$8,000 check")

23  into WFB Account 1491 at an ATM in Gardena, California.  This check

24  listed L.A.R. as the payee and was falsely endorsed using L.A.R.'s

25  forged signature.  L.A.R. did not give defendant or co-defendant

26  CORONA consent to use or possess L.A.R.'s name or signature.  At the

27  time co-defendant CORONA deposited the $8,000 check, co-defendant

28

CORONA and defendant knew that L.A.R.'s name and signature belonged to a real person.

i.   Prior to co-defendant CORONA depositing the $8,000 check into WFB Account 1491, defendant solicited the account holder of WFB Account 1491 (the "Account Holder") through social media and asked the Account Holder to provide the debit card and bank account information for WFB Account 1491.  Defendant solicited the Account Holder so that co-defendant CORONA could deposit stolen checks, like the $8,000 check, into WFB Account 1491.  The Account Holder provided the debit card and account information for WFB Account 1491 to defendant and co-defendant CORONA.  Defendant admits that by engaging in this conduct, he aided and abetted co-defendant CORONA's commission of aggravated identity theft, as defendant: (1) aided co-defendant CORONA with depositing the $8,000 check into WFB Account 1491; (2) acted with the intent to facilitate co-defendant CORONA's deposit of the $8,000 check into WFB Account 1491; and (3) acted before co-defendant CORONA completed the deposit of the $8,000 check into WFB Account 1491.

SENTENCING FACTORS

17.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will

be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and up to the maximum set by statute for the crimes of conviction.

18.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| More than $3.5 Million of Loss: | +18 | U.S.S.G. § 2B1.1(b)(1)(J) |
| 10 or More Victims: | +2 | U.S.S.G. § 2B1.1(b)(2)(A)(i) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Defendant understands that the Court must sentence defendant to a term of two years' imprisonment on Count 46, which must run consecutive to any term of imprisonment imposed for Count One.

19.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

20.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

21.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant

1  understands, however, that, defendant retains the right to be

2  represented by counsel -- and if necessary have the Court appoint

3  counsel -- at every other stage of the proceeding.

4          d.    The right to be presumed innocent and to have the

5  burden of proof placed on the government to prove defendant guilty

6  beyond a reasonable doubt.

7          e.    The right to confront and cross-examine witnesses

8  against defendant.

9          f.    The right to testify and to present evidence in

10  opposition to the charges, including the right to compel the

11  attendance of witnesses to testify.

12          g.    The right not to be compelled to testify, and, if

13  defendant chose not to testify or present evidence, to have that

14  choice not be used against defendant.

15          h.    Any and all rights to pursue any affirmative defenses,

16  Fourth Amendment or Fifth Amendment claims, and other pretrial

17  motions that have been filed or could be filed.

18                    <u>WAIVER OF APPEAL OF CONVICTION</u>

19      22.  Defendant understands that, with the exception of an appeal

20  based on a claim that defendant's guilty pleas were involuntary, by

21  pleading guilty defendant is waiving and giving up any right to

22  appeal defendant's convictions on the offenses to which defendant is

23  pleading guilty.  Defendant understands that this waiver includes,

24  but is not limited to, arguments that the statutes to which defendant

25  is pleading guilty are unconstitutional, and any and all claims that

26  the statement of facts provided herein is insufficient to support

27  defendant's pleas of guilty.

28

1          LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

2          23.  Defendant agrees that, provided the Court, before

3     imposition of the mandatory consecutive sentence of two years'

4     imprisonment on Count 46, imposes a term of imprisonment within or

5     below the range corresponding to an offense level of 24 and the

6     criminal history category calculated by the Court, defendant gives up

7     the right to appeal all of the following: (a) the procedures and

8     calculations used to determine and impose any portion of the

9     sentence; (b) the term of imprisonment imposed by the Court; (c) the

10    fine imposed by the Court, provided it is within the statutory

11    maximum; (d) to the extent permitted by law, the constitutionality or

12    legality of defendant's sentence, provided it is within the statutory

13    maximum; (e) the amount and terms of any restitution order, provided

14    it requires payment of no more than $2,722,632.52; (f) the term of

15    probation or supervised release imposed by the Court, provided it is

16    within the statutory maximum; and (g) any of the following conditions

17    of probation or supervised release imposed by the Court: the

18    conditions set forth in Second Amended General Order 20-04 of this

19    Court; the drug testing conditions mandated by 18 U.S.C.

20    §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions

21    authorized by 18 U.S.C. § 3563(b)(7).

22         24.  The USAO agrees that, provided (a) all portions of the

23    sentence are at or above the statutory minimum and at or below the

24    statutory maximum specified above and (b) before imposition of the

25    mandatory consecutive sentence of two years' imprisonment on Count

26    46, the Court imposes a term of imprisonment within or above the

27    range corresponding to an offense level of 24 and the criminal

28    history category calculated by the Court, the USAO gives up its right

23

1    to appeal any portion of the sentence, with the exception that the

2    USAO reserves the right to appeal the following: the amount of

3    restitution ordered if that amount is less than $2,722,632.52.

RESULT OF WITHDRAWAL OF GUILTY PLEA

5        25.  Defendant agrees that if, after entering guilty pleas

6    pursuant to this agreement, defendant seeks to withdraw and succeeds

7    in withdrawing defendant's guilty pleas on any basis other than a

8    claim and finding that entry into this plea agreement was

9    involuntary, then (a) the USAO will be relieved of all of its

10   obligations under this agreement; and (b) should the USAO choose to

11   pursue any charge that was either dismissed or not filed as a result

12   of this agreement, then (i) any applicable statute of limitations

13   will be tolled between the date of defendant's signing of this

14   agreement and the filing commencing any such action; and

15   (ii) defendant waives and gives up all defenses based on the statute

16   of limitations, any claim of pre-indictment delay, or any speedy

17   trial claim with respect to any such action, except to the extent

18   that such defenses existed as of the date of defendant's signing this

19   agreement.

RESULT OF VACATUR, REVERSAL, OR SET-ASIDE

21       26.  Defendant agrees that if any count of conviction is

22   vacated, reversed, or set aside, the USAO may: (a) ask the Court to

23   resentence defendant on any remaining count of conviction, with both

24   the USAO and defendant being released from any stipulations regarding

25   sentencing contained in this agreement, (b) ask the Court to void the

26   entire plea agreement and vacate defendant's guilty plea on any

27   remaining count of conviction, with both the USAO and defendant being

28   released from all their obligations under this agreement, or

24

(c) leave defendant's remaining conviction, sentence, and plea agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

EFFECTIVE DATE OF AGREEMENT

27.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

28.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

29.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

1        a.   Defendant agrees that any applicable statute of
2 limitations is tolled between the date of defendant's signing of this
3 agreement and the filing commencing any such action.

4        b.   Defendant waives and gives up all defenses based on
5 the statute of limitations, any claim of pre-indictment delay, or any
6 speedy trial claim with respect to any such action, except to the
7 extent that such defenses existed as of the date of defendant's
8 signing this agreement.

9        c.   Defendant agrees that: (i) any statements made by
10 defendant, under oath, at the guilty plea hearing (if such a hearing
11 occurred prior to the breach); (ii) the agreed to factual basis
12 statement in this agreement; and (iii) any evidence derived from such
13 statements, shall be admissible against defendant in any such action
14 against defendant, and defendant waives and gives up any claim under
15 the United States Constitution, any statute, Rule 410 of the Federal
16 Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
17 Procedure, or any other federal rule, that the statements or any
18 evidence derived from the statements should be suppressed or are
19 inadmissible.

20 <u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>
21 <u>OFFICE NOT PARTIES</u>

22    30.  Defendant understands that the Court and the United States
23 Probation and Pretrial Services Office are not parties to this
24 agreement and need not accept any of the USAO's sentencing
25 recommendations or the parties' agreements to facts or sentencing
26 factors.

27    31.  Defendant understands that both defendant and the USAO are
28 free to: (a) supplement the facts by supplying relevant information

to the United States Probation and Pretrial Services Office and the
Court, (b) correct any and all factual misstatements relating to the
Court's Sentencing Guidelines calculations and determination of
sentence, and (c) argue on appeal and collateral review that the
Court's Sentencing Guidelines calculations and the sentence it
chooses to impose are not error, although each party agrees to
maintain its view that the calculations in paragraph 18 are
consistent with the facts of this case.  While this paragraph permits
both the USAO and defendant to submit full and complete factual
information to the United States Probation and Pretrial Services
Office and the Court, even if that factual information may be viewed
as inconsistent with the facts agreed to in this agreement, this
paragraph does not affect defendant's and the USAO's obligations not
to contest the facts agreed to in this agreement.

32.  Defendant understands that even if the Court ignores any
sentencing recommendation, finds facts or reaches conclusions
different from those agreed to, and/or imposes any sentence up to the
maximum established by statute, defendant cannot, for that reason,
withdraw defendant's guilty pleas, and defendant will remain bound to
fulfill all defendant's obligations under this agreement.  Defendant
understands that no one -- not the prosecutor, defendant's attorney,
or the Court -- can make a binding prediction or promise regarding
the sentence defendant will receive, except that it will be between
the statutory mandatory minimum and within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

33.  Defendant understands that, except as set forth herein,
there are no promises, understandings, or agreements between the USAO
and defendant or defendant's attorney, and that no additional

27

1  promise, understanding, or agreement may be entered into unless in a

2  writing signed by all parties or on the record in court.

3          PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

4      34.  The parties agree that this agreement will be considered

5  part of the record of defendant's guilty plea hearing as if the

6  entire agreement had been read into the record of the proceeding.

7  AGREED AND ACCEPTED

8  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
9  CALIFORNIA

10 E. MARTIN ESTRADA
   United States Attorney

11

12 *Sarah E. Spielberger*        April 16, 2024

13 SARAH E. SPIELBERGER        Date
   Assistant United States Attorney

14

15 JOHN WESLEY BESS JR.      4/26/24
   Defendant         Date

16

17 PAUL W. BLAKE         4/26/24
   Attorney for Defendant JOHN WESLEY  Date
   BESS JR.

18

19 ///

20 ///

21 ///

22

23

24

25

26

27

28

CERTIFICATION OF DEFENDANT

1
2       I have read this agreement in its entirety.  I have had enough
3  time to review and consider this agreement, and I have carefully and
4  thoroughly discussed every part of it with my attorney.  I understand
5  the terms of this agreement, and I voluntarily agree to those terms.
6  I have discussed the evidence with my attorney, and my attorney has
7  advised me of my rights, of possible pretrial motions that might be
8  filed, of possible defenses that might be asserted either prior to or
9  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),
10 of relevant Sentencing Guidelines provisions, and of the consequences
11 of entering into this agreement.  No promises, inducements, or
12 representations of any kind have been made to me other than those
13 contained in this agreement.  No one has threatened or forced me in
14 any way to enter into this agreement.  I am satisfied with the
15 representation of my attorney in this matter, and I am pleading
16 guilty because I am guilty of the charges and wish to take advantage
17 of the promises set forth in this agreement, and not for any other
18 reason.

19

20 JOHN WESLEY BESS JR.                          Date   4/26/24
   Defendant
21
22 ///
23 ///
24 ///
25
26
27

1

## CERTIFICATION OF DEFENDANT'S ATTORNEY

2       I am JOHN WESLEY BESS JR.'s attorney.  I have carefully and

3   thoroughly discussed every part of this agreement with my client.

4   Further, I have fully advised my client of his rights, of possible

5   pretrial motions that might be filed, of possible defenses that might

6   be asserted either prior to or at trial, of the sentencing factors

7   set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8   provisions, and of the consequences of entering into this agreement.

9   To my knowledge: no promises, inducements, or representations of any

10  kind have been made to my client other than those contained in this

11  agreement; no one has threatened or forced my client in any way to

12  enter into this agreement; my client's decision to enter into this

13  agreement is an informed and voluntary one; and the factual basis set

14  forth in this agreement is sufficient to support my client's entry of

15  guilty pleas pursuant to this agreement.

16

17  PAUL W. BLAKE                          Date: 4/26/24
    Attorney for Defendant JOHN WESLEY
18  BESS JR.